CASE NO. 18-21626-CIV-ALTONAGA/Goodman

MSP RECOVERY CLAIMS,
SERIES LLC,

        Plaintiff,

v.

USAA GENERAL INDEMNITY
COMPANY,

        Defendant.

_____/

## ORDER

**THIS CAUSE** came before the Court for a hearing on September 13, 2018 ("September 13 Hearing") [ECF No. 74], on Defendant, USAA General Indemnity Company's ("USAA['s]") Motion to Dismiss Plaintiff's Third Amended Class Complaint for Damages ("Fourth Motion") [ECF No. 63], filed August 6, 2018. Plaintiff, MSP Recovery Claims, Series LLC ("Plaintiff" or "MSP Series") filed its Response in Opposition ("Opp'n") [ECF No. 65], and USAA filed its Reply [ECF No. 70]. After the hearing, USAA filed a Notice of Supplemental Authority [ECF No. 76]. The Court has carefully reviewed the Third Amended Complaint [ECF No. 46], the parties' briefing, the record, and applicable law. For the reasons explained below, the Fourth Motion is granted.

## I.      BACKGROUND

### A.    Procedural Background

MSP Series filed its first Complaint [ECF No. 1-1] in this action in state court, naming as the Defendant, United Services Automobile Association ("US Auto"), on August 10, 2017. (*See* Notice of Removal [ECF No. 1] 1). Some eight months after US Auto moved to dismiss the

Complaint (*see* Mot. 3), MSP Series filed an Amended Class Action Complaint for Damages [ECF No. 1-4]. (*See id.*). The Amended Complaint introduced a cause of action alleging a violation of the Medicare Secondary Payer Act, 42 U.S.C. section 1395y(b)(3)(A), in relation to a "representative" accident claim of K.N., who was enrolled in a Medicare Advantage plan issued and administered by Heath First Administrative Plans ("HFAP"). (*See id.* ¶ 7). HFAP is allegedly "a [Medicare Advantage Organization] MAO" that was charged for K.N.'s bills and then assigned its rights to recover conditional payments to MSP Recovery, LLC ("MSP Recovery"). (*Id.* ¶¶ 7, 11, 14 (alterations added)). MSP Recovery then assigned the recovery rights to Plaintiff. (*See id.* ¶ 15). US Auto removed the action on April 24, 2018. (*See* Notice of Removal 2).

Then, on May 8, 2018, US Auto filed a Motion to Dismiss Plaintiff's Amended Class Action Complaint ("Second Motion") [ECF No. 16] on the basis — among other arguments raised — certain assignment agreements upon which Plaintiff relied were insufficient to confer standing upon MSP Series. (*See id.* 3). US Auto learned from public records and case law that HFAP is not an MAO, and only MAOs may bring claims under 42 U.S.C. section 1395y, the Medicare Secondary Payer Act (the "MSP law" or "MSP Act"). (*See id.* 16–17 (citing cases)). US Auto also asserted MSP Series failed to allege any nexus or reason why US Auto might owe anything to the Assignor that allegedly assigned its claims to Plaintiff. (*See id.* 4).

On May 24, 2018, MSP Series filed an Unopposed Motion for Leave to File Second Amended Complaint [ECF No. 22]. Consequently, the Court denied the Second Motion as moot and allowed MSP to file its third pleading. (*See* Order [ECF No. 24]). On May 25, 2018, MSP Series filed its third pleading, a Second Amended Complaint ("SAC") [ECF No. 26]. The SAC alleged (1) a different entity, Health First Health Plans, Inc. ("HFHP") is actually the MAO in

which K.N. was enrolled, (2) HFHP paid K.N.'s bills, and (3) HFHP owned the conditional recovery rights, which itassigned to MSP Series. (*See* SAC ¶¶ 7, 10, 13).

On June 15, 2018, US Auto filed a Motion to Dismiss ("Third Motion") [ECF No. 32], arguing, among other things, because of defective assignments, Plaintiff lacked standing; and it had sued the incorrect defendant. (*See generally id.*). On June 21, 2018, MSP Series filed a Motion for Leave to Amend [ECF No. 34] and Corrected Motion for Leave to Amend [ECF No. 35], asking it be allowed to file a fourth pleading, a third amended complaint, to add "clarifying allegations regarding assignment of all rights of recovery" and to change the named Defendant. (*Id.* 1).

Following a hearing on June 29, 2018 ("June 29 Hearing") [ECF No. 44], the Court denied the Third Motion, allowed Plaintiff to "file its third and final amended complaint," and gave MSP Series until July 9, 2018 to serve the new Defendant. (Order [ECF No. 45] 1). On July 2, 2018, MSP Series filed its Third Amended Complaint ("TAC") [ECF No. 46], for the first time naming USAA. The present, Fourth Motion followed, challenging (1) Plaintiff's Article III standing, (2) Plaintiff's compliance with prerequisites to filing suit, and (3) Plaintiff's ability to allege a breach-of-contract or subrogation claim. (*See* Fourth Mot. 8–20). Because the Court agrees Plaintiff lacks standing to bring the claims, the Court does not reach the remaining arguments.

## B. Factual Background

### 1. Plaintiff's Allegations

The TAC alleges this is a class action brought under the MSP Act, 42 U.S.C. section 1395y, arising from USAA's "systematic and uniform failure to reimburse conditional Medicare payments. (TAC ¶ 1). MSP Series alleges USAA has repeatedly failed to provide primary

payment, or reimburse secondary payments made by MSP Series's assignors and Class Members on behalf of Medicare beneficiaries enrolled in Part C of the Medicare Act (the "Enrollees"), for medical expenses resulting from injuries sustained in automobile accidents. (*See id.* ¶ 2). The Enrollees were enrolled in Medicare Advantage health plans offered by MSP Series's assignors and Class Members, i.e., Medicare Advantage Organizations ("MAOs['s]"), which suffered an injury-in-fact from USAA's failure to reimburse, and therefore have standing to sue under 42 U.S.C. section 1395y(b)(3)(A). (*See id.*).

MSP Series's assignors and the putative Class Members are MAOs that provided Medicare benefits to the Enrollees. (*See id.* ¶ 3). The Enrollees suffered injuries related to accidents, and MSP Series's assignors and the putative Class Members paid for medical services required by the Enrollees. (*See id.*). Because the Plaintiff's assignors and Class Members' Enrollees were also covered by no-fault policies issued by USAA, USAA is a primary payer under the MSP Law and must reimburse MSP Series and the Class Members for their payments of accident-related medical expenses. (*See id.*).

Congress provided a private right of action for enforcement of the MSP Law and to remedy a primary payer's failure to reimburse conditional payments made by Medicare or an MAO. (*See id.* ¶ 4). The K.N. claim demonstrates Plaintiff's right to recover for USAA's failure to meet its reimbursement obligations under the MSP Law. (*See id.* ¶ 6). K.N. was enrolled in a Medicare Advantage plan issued by HFHP, an MAO. (*See id.* ¶ 7). K.N. was injured in April 2011 in an automobile accident caused by a third-party insured under a no-fault policy issued by USAA. (*See id.* ¶ 8). USAA's no-fault insurance policy provided primary coverage for K.N.'s accident-related medical costs and expenses. (*See id.*). Medical providers rendered services and then issued bills for payment to K.N.'s MAO, HFHP, which was

responsible for all medical expenses incurred. (*See id.* ¶ 11). HFHP paid $3,365.01 for these medical expenses, although the medical provider billed and charged a greater amount. (*See id.*).

Plaintiff alleges USAA is liable to pay the actual amount billed because it was K.N.'s primary payer by virtue of the no-fault insurance policy providing primary coverage for K.N.'s accident-related medical costs and expenses. (*See id.* ¶ 12). USAA admitted to the Centers for Medicare and Medicaid Services ("CMS") that it was the primary payer for K.N. (*See id.*). USAA was aware of its responsibility to reimburse HFHP. (*See id.*). Nevertheless, USAA failed to do so, giving rise to a claim under the MSP Law. (*See id.*).

MSP Series alleges it has the legal right to pursue this MSP Law claim under a series of "valid assignment agreements." (*Id.* ¶ 13). On April 28, 2016, HFHP, through its administrator, HFAP, irrevocably assigned its rights to recover conditional payments made on behalf of its Enrollees to MSP Recovery in an HFAP Recovery Agreement ("Recovery Agreement"). (*See id.* ¶ 14). According to Plaintiff, HFHP's assignment is evidenced by:

(1) the April 28, 2016 HFAP Recovery Agreement executed by HFHP and HFAP's Chief Operating Officer, Michael Keeler (TAC Ex. D [ECF No. 46-4]);

(2) Mr. Keeler, who states in an affidavit (Affidavit of Michael Keeler ("First Keeler Aff."), TAC Ex. E [ECF No. 46-5]) that HFHP intended to and did assign the Assigned Claims to MSP Recovery on April 28, 2016;

(3) Mr. Keeler, who states in a June 1, 2018 Supplemental Affidavit (Supplemental Affidavit of Michael Keeler ("Second Keeler Aff.") TAC Ex. F [ECF No. 46-6]), that (a) HFAP and HFHP intended the HFAP Recovery Agreement to irrevocably assign the Medicare Secondary Payer recovery rights of HFHP to MSP Recovery and/or its assigns, and authorize the transfer of HFHP's claims data to MSP Recovery for analysis and use, and

(b) HFAP performs all administrative functions for HFHP and has the authority to enter into agreements transferring the recovery rights of HFHP;

(4) a *nunc pro tunc* June 1 Assignment ("Nunc Pro Tunc Assignment") executed by Mr. Keeler (*see* TAC Ex. F, 6–7); and

(5) an Addendum to the Recovery Agreement and Assignment Addendum ("Addendum") between HFAP, HFHP, and MSP Recovery, dated June 1, 2018 and executed by Mr. Keeler (*see* TAC Ex. F, 4–5).

(*See* TAC ¶ 14).

All administrative functions of HFHP, including the issuance of conditional payments, are accomplished by HFAP. (*See id.* ¶ 16). As HFHP generally acts through HFAP for administrative functions, the Recovery Agreement was executed by HFAP on behalf of all affiliated health plans and MAOs having direct contracts with CMA, which includes HFHP. (*See id.*). The Nunc Pro Tunc Assignment confirms, ratifies and memorializes HFHP's assignment of the Assigned Claims, as defined in the HFAP Recovery Agreement, as of April 28, 2016. (*See id.* ¶ 17; Ex. F 6–7). According to the Recovery Agreement, and consistent with the Nunc Pro Tunc Assignment, HFHP transferred and delivered all claims data for dates of service between February 2007 and December 2016 to MSP Recovery on June 8, 2016. (*See id.* ¶ 18). The claims data transferred to MSP Recovery by HFHP constitute the Assigned Claims. (*See id.*).

On June 12, 2017, MSP Recovery assigned all rights acquired under the Recovery Agreement — as confirmed by the Nunc Pro Tunc Assignment and Addendum — to Plaintiff MSP Series, under one of its designated series, Series 16-05-456 LLC ("Series Assignment").

(*See id.* ¶ 19). The Series Assignment from MSP Recovery to Plaintiff's Series 16-05-46 LLC appears as Exhibit G to the TAC [ECF No. 46-7].

On the basis of the foregoing allegations regarding the existence of a valid assignment to Plaintiff MSP Series, the TAC proceeds to provide a background concerning the MSP Law (*see id.* ¶¶ 33–34), MAOs (*see id.* ¶¶ 35–36), the Medicare payment process (*see id.* ¶ 37), CMS's standard for storing digital health insurance claims data (*see id.* ¶¶ 38–39), and detailed explanation of Plaintiff's use of electronic data interchange to analyze claims data and identify reimbursement claims under the MSP Law (*see id.* ¶¶ 40–42).

MSP Series explains it is a Delaware series limited liability company that has established various Series owned exclusively by MSP Recovery. (*See id.* ¶ 43). All Series form a part of Plaintiff and are owned by Plaintiff. (*See id.*). Numerous assignors have assigned their recovery rights to assert certain causes of action to series LLCs of the Plaintiff, and Plaintiff maintains the legal right to sue on behalf of each of its designated series LLCs. (*See id.* ¶ 44).

MSP Series, on behalf of a purported class (*see id.* ¶¶ 47–55), brings two claims arising out of USAA's failure to pay or reimburse Medicare payments which are secondary and must be reimbursed if a primary payer is available (*see id.* ¶ 56). Count I is titled "Private Cause of Action Under 42 U.S.C. § 1395y(b)(3)(A)," the Medicare Secondary Payer Act. (*Id.* 25). Count II is titled "Direct Right of Recovery Pursuant to 42 C.F.R. § 411.24(e) for Breach of Contract." (*Id.* 26).

2.    *The TAC's Referenced Agreements and Exhibits*

In alleging its standing to bring this suit, MSP Series relies on several assignments and related agreements evidencing an MAO assigned its right to bring claims under the MSP Law to the named Plaintiff. The crux of USAA's challenge to MSP Series's standing is the absence of

an unbroken chain of assignments from an MAO to Plaintiff. Consequently, a close examination of the TAC's allegations and its attached contracts and affidavits — and ascertaining whether the contracts support the TAC's allegations that MSP Series has standing to bring the claims asserted — is necessary to resolving the merits of the standing question.

<u>April 2016 Recovery Agreement</u>

The first contract in the chain of assignments is the April 28, 2016 Recovery Agreement between HFAP and MSP Recovery. (*See* TAC Ex. D). The Recovery Agreement is not signed by and does not reference HFHP, the entity that allegedly paid the K.N. bills and assigned its reimbursement rights. (*See generally id.*). It is not signed by nor does it reference any other MAO. (*See generally id.*). While the TAC alleges HFHP assigned its rights on behalf of HFHP through its administrator, HFAP, the Recovery Agreement is entered into by HFAP only, defined as "Client." (Recovery Agreement 1). Indeed, section 6.1(b)(ii) states the client, HFAP, "has all right, title, interest in and ownership of the Claims being assigned subject to this Agreement, free and clear of all liens and encumbrances." (*Id.* 5).

Again, the TAC alleges the Recovery Agreement was executed by Mr. Keeler as COO of HFAP and HFHP. (*See* TAC ¶ 14(a)). Yet the signature page of the Recovery Agreement shows Mr. Keeler signed only as the COO of HFAP. (*See* Recovery Agreement 9). MSP Series alleges HFAP executed the Recovery Agreement on behalf of all affiliated health plans and MAOs having direct contracts with CMS, which includes HFHP, citing to section 2.2 of the Recovery Agreement. (*See* TAC ¶ 16). Section 2.2 says no such thing. (*See* Recovery Agreement 3). Section 2.2 addresses MSP Recovery's responsibility to pay the Client, HFAP, a contingent deferred purchase price as consideration for the Assigned Claims. (*See id.*). "Any health plan(s) of the client [HFAP] are encompassed within the Agreement." (*Id.* (alteration added)).

As pointed out by USAA at the September 13 Hearing, "nowhere in this document is there any mention of Health First Health Plans, the entity that Plaintiff[] allege[s] [has] these reimbursement rights." (Sept. 13, 2018 Hr'g Tr. 9:22–24 [ECF No. 77] (alterations added)). Nor is there any indication in the Recovery Agreement HFAP is acting on behalf of or assigning the rights of any other MAO. (*See generally* Recovery Agreement). In short, the Recovery Agreement expresses no intent to assign rights of HFHP, but rather only rights represented to be 100 percent owned by HFAP. (*See generally* Recovery Agreement).

<u>First Keeler Affidavit and Related Documents</u>

On April 12, 2018, Mr. Keeler signed his First Affidavit on behalf of HFAP and HFHP. (*See* First Keeler Aff., TAC Ex. E [ECF No. 46-5]). He states he is the Chief Operating Officer of HFAP and HFHP (*see id.* ¶ 1), and explains HFHP contracts with CMS and HFAP performs administrative functions on behalf of HFHP (*see id.* ¶ 3). Under an Administrative and Financial Management Agreement (*see* Administrative and Financial Management Agreement ("Admin. Agreement") TAC Ex. E, Ex. A [ECF No. 46-5] 4–6), HFAP has authority to manage and act on behalf of HFHP with respect to all financial assets, including the Assigned Claims. (*See* First Keeler Aff. ¶ 5). Mr. Keeler asserts HFAP, on behalf of HFHP, entered into the Recovery Agreement with MSP Recovery, assigning to MSP Recovery all rights and interest in the Assigned Claims. (*See id.* ¶ 6).

Mr. Keeler states he signed the Recovery Agreement for and on behalf of HFAP and all affiliated health plans, subsidiaries, related entities, and MAOs having direct contracts with CMS for which HFAP performs administrative functions. (*See id.* ¶ 7). He states the Recovery Agreement "provided that any of HFAP's health plans were encompassed within the Agreement, including Health First Health Plans, Inc." (*Id.*). He explains the claims data transferred by

HFAP and HFHP for service dates between 2007 and 2016 correspond to the members of HFHP, and it was always the intent of the parties that all claims data of HFHP transferred to MSP Recovery encompassed the claims assigned. (*See id.* ¶ 8).

The Administrative Agreement is dated January 1, 2016, and is entered between Health First Government Plans, Inc. ("HFGP") and HFAP. (*See* Admin. Agreement 1). The Agreement states both entities are owned by Health First Holding Corp., and it memorializes HFAP will be providing HFGP administrative and financial management services. (*See id.*).

In *MSP Recovery Claims, Series LLC v. Auto-Owners Insurance Company*, No. 1:17-cv-23841-PAS, 2018 WL 1953861, at *5 (S.D. Fla. April 25, 2018) ("*Auto-Owners*"), the court describes the Administrative Agreement as requiring HFAP to act as a "contractor to provide administrative and financial management services. Nothing in the agreement demonstrates that HFAP is contracted to pursue claims under § 1395y(b)(3)(A)." *Id.* "[A] contract for services is not an assignment of rights." *Id.* (alteration added). Similarly, in *MAO-MSO Recovery II, LLC v. State Farm Mutual Automobile Insurance Company*, No. 1:17-cv-01541-JBM-JEH, 2018 WL 2392827, at *5 (C.D. Ill. May 25, 2018) ("*State Farm*"), in addressing the nature of the Administrative Agreement, the court noted it "simply does not contain *any* provision even suggesting, let alone explicitly stating, that HFHP intended to transfer claims under the MSP provisions to HFAP." *Id.* (emphasis in original). In short, the Administrative Agreement is not evidence HFHP assigned its legal rights under the K.N. claim or gave HFAP authority to pursue them; rather, it is simply an agreement for the furnishing of administrative and financial services by HFAP.

Second Keeler Affidavit and Related Documents

On June 1, 2018, Mr. Keeler signed a Second Affidavit [ECF No. 46-6], explaining HFHP acts through its corporate officers and has no employees. (*See id.* ¶ 5). All of HFHP's administrative functions are carried out by HFAP under the Administrative Agreement. (*See id.*). He then goes on to state:

> 6. On April 28, 2016, I executed a Recovery Agreement and Assignment Addendum (the "Agreement") with MSP Recovery, LLC, and/or its assigns ("MSP Recovery"), whereby HFAP assigned to MSP Recovery all right, title, interest in and ownership of Assigned Claims, as defined in the Agreement. The purpose of that agreement was to irrevocably assign the Medicare Secondary Payer recovery rights of HFHP to MSP Recovery and authorize the transfer of HFHP's claims data to MSP Recovery for analysis and use in furtherance of that end.

> 7. As indicated in the Agreement, I executed the Agreement as COO of HFAP specifically for the affiliated health plans for which HFAP performs administrative functions. Section 2.2 of the Agreement explicitly stated that "Any health plan(s) of the Client are encompassed within the Agreement." Moreover, the only purpose of executing the Agreement was to empower MSP Recovery to pursue the recovery rights of HFHP, the Medicare Advantage Organization ("MAO") affiliated with HFAP that contracted directly with CMS.

> 8. I and other officers and authorized employees of HFAP, in the name of HFAP, regularly conduct business and execute contracts on behalf of HFHP, because that is the fully authorized function of HFAP. Therefore, executing the Agreement as COO of HFAP was a customary and appropriate action, despite the specific issue later identified.

> \*          \*          \*

> 10. The claims data that was transferred to MSP Recovery encompassed claims payments made by HFHP for and on behalf of its beneficiaries, members and enrollees for dates of service between February 5, 2007 and November 23, 2016. HFHP was the proper assignor of all right, title, interest in and ownership of Assigned Claims in the Agreement with MSP Recovery.

> \*          \*          \*

> 12. The recent court orders scrutinizing the distinction between HFHP's *ownership* of the rights to MSP recovery vis-à-vis HFAP's *authorization* to take any and all action on HFHP's behalf, including disposal of its owned assets, leads

to the conclusion that had I signed the Agreement in my role as COO of HFHP, the present controversy would have been avoided. At all times I was fully authorized to, and there was nothing preventing me from, executing the Agreement as COO of, and directly on behalf of, HFHP. . . .

13. Therefore, with full authorization of HFHP and HFAP in my role as COO of both entities, I have executed an addendum to the Agreement to clarify and ratify the intent and actions on and since April 28, 2016. The addendum is attached as Exhibit 1 to this affidavit. I have also executed an Assignment by HFHP, effective April 28, 2016, of all MSP recovery rights of HFHP. The assignment is attached as Exhibit 2 to this affidavit.

\*              \*              \*

15. HFHP was, and is to be, recognized as an assignor and a named party to the Agreement with MSP Recovery and was at all times an assignor of all right, title, interest in and ownership of Assigned Claims, as defined in the Agreement.

(*Id.* (emphasis in original; alterations added)).

The June 1, 2018 Addendum's stated intent is to confirm, ratify and memorialize "the intent of the parties [in the April 2016 Recovery Agreement]" that HFHP "was an assignor and intended party to the Agreement dated April 28, 2016 and was inadvertently not specifically included by name in said Agreement, and that MSP Recovery obtained all right, title and interest in and to the Assigned claims on April 28, 2016." (Addendum 1 (alteration added)). Mr. Keeler signed the Addendum as COO of HFHP and COO of HFAP. (*See id.* 2).

The June 1, 2018 Nunc Pro Tunc Assignment "effective April 28, 2016," signed by Mr. Keeler as COO of HFHP, states the intentions of the client HFHP and assignee MSP Recovery, whereby HFHP "wishes to assign to MSP Recovery all right, title, interest in and ownership of the Claims (Assigned Claims as defined, herein) . . . ." (Nunc Pro Tunc Assignment 1). MSP Recovery is not the named Plaintiff in this action. The named Plaintiff, again, is MSP Recovery Claims, Series LLC.

Series Assignment

As stated, the TAC alleges on June 12, 2017, MSP Recovery assigned all rights acquired under the Recovery Agreement, "as confirmed by the Nunc Pro Tunc Assignment and Addendum, to Plaintiff, under one of its designated series: Series 16-05-456 LLC ('the Series Assignment')." (TAC ¶ 19). That Series Assignment [ECF No. 46-7], states the assignor, MSP Recovery, assigns to Series 16-05-456 LLC, a series of MSP Recovery Claims, Series LLC, the Assigned Claims as those are defined in the April 28, 2015 [sic] Recovery Agreement between HFAP and MSP Recovery, regardless of when those claims were vested in HFAP. (*See* Series Assignment 1). To be clear, the Series Assignment does not pass on to MSP Series the rights purportedly assigned in the Nunc Pro Tunc Assignment.

## II.    STANDARD

USAA challenges subject matter jurisdiction, in particular MSP's standing to bring the claims asserted, and so Federal Rule of Civil Procedure 12(b)(1) applies. *See Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008). "Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under [Rule] 12(b)(1)." *Id.* (alteration added; internal quotation marks and citation omitted). A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may be based upon either a facial or factual challenge to the complaint. *See McElmurray v. Consol. Gov't of Augusta–Richmond Cty.*, 501 F.3d 1244, 1251 (11th Cir. 2007) (citation omitted). In addressing a facial attack, the court merely looks to see if the plaintiff has sufficiently alleged a basis for subject matter jurisdiction, and the complaint's allegations are accepted as true. *See id.* (citation omitted). In contrast, because a factual attack challenges the existence of subject matter jurisdiction in fact, the court may consider matters

outside the pleading such as testimony and affidavits. *See id.* (citation omitted).

To establish subject matter jurisdiction, a plaintiff must allege he has standing, which consists of three elements: "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, – U.S. –, 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016), *as revised* (May 24, 2016). "To establish injury in fact, a plaintiff must demonstrate he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). For an injury to be particularized, it "must affect the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560 n.1. For the injury to be "concrete," it must be "real," and not "abstract;" however it need not be "tangible." *Spokeo*, 136 S. Ct. at 1548–49 (explaining intangible violations such as restricting free speech can qualify as concrete harms).

## III.  DISCUSSION

Defendant moves to dismiss for lack of standing because based on "the allegations and exhibits to the Third Amended Complaint . . . Plaintiff fails to allege facts supporting its purported standing or a valid claim for relief." (Mot. 2 (alteration added)). Because USAA does not ask the Court to consider any extrinsic evidence outside of the TAC or its attachments, the Motion "constitutes a facial attack on [Plaintiff's] standing." *MSP Recovery Claims, Series LLC v. ACE Am. Ins. Co.*, No. 17-CV-23749, 2018 WL 1547600, at *6 (S.D. Fla. Mar. 9, 2018) (alteration added). Accordingly, the Court looks only to the TAC and its exhibits and treats well-pled allegations in the TAC as true. *See id.* Nevertheless, where the agreements and

assignments attached to the TAC contradict conclusory allegations in the TAC regarding standing, "the exhibits govern." *Crenshaw v. Lister*, 556 F.3d 1283, 1292 (11th Cir. 2009).

A.     Introduction

It was in the SAC that MSP Series first alleged HFHP is the MAO in which K.N. was enrolled, that paid K.N.'s bills, and which owned the recovery rights allegedly assigned to Plaintiff. (*See* SAC ¶¶ 7, 10, 13). Prior to this pleading, MSP Series alleged HFAP was that entity. This material amendment to Plaintiff's allegations was inserted into the case one day before the district court in *State Farm* made the following observations:

> The Court does not believe Plaintiffs have been completely forthcoming about exactly who the alleged assignor is in this case. . . . [T]he Amended Complaint makes clear that any reference to "Health First" refers to HFAP. No matter how Plaintiffs twist it, their Amended Complaint is not accurate. HFAP did not pay the representative beneficiary's medical expenses; HFHP did. Therefore, if anybody is to be reimbursed under the MSP provisions, it is HFHP, not HFAP. It is not a "minor" clarification to say that an entirely separate corporation incurred injury.

*State Farm*, 2018 WL 2392827, at *4 (alterations added). The court in *State Farm* went on to explain the reason it was requiring the plaintiffs to show cause why Rule 11 sanctions should not be entered:

> Plaintiffs tacitly admit that their Amended Complaint is not accurate. Plaintiffs explicitly identified HFAP as the MAO in their Amended Complaint that paid for R.Y.'s medical expenses. Now, after being outed by the Florida court and State Farm, Plaintiffs seek to "clarify" that HFHP is actually the MAO that paid for R.Y.'s medical expenses, and did not receive reimbursement.

*Id.* at *7.

In its Motion, USAA advises there are at least seven cases involving Plaintiff and/or its affiliates in which courts have ruled non-Medicare Advantage Organizations cannot sue for payment under the MSP Act. (*See* Mot. 3, n.3 (citing cases)). USAA also lists over 20 cases where judges in this district have dismissed cases similar to this one for the failure by the

plaintiff to allege facts supporting standing. (*See id.* 1, n.2 (listing cases)).

With this backdrop, USAA argues HFAP, the entity that purportedly assigned to MSP Series the claim in this lawsuit, did not pay the bills at issue and therefore could not have suffered an injury in fact, and is also not an MAO. (*See id.* 2–3). USAA states that in trying "to overcome these obvious defects in the last two iterations of the pleading, Plaintiff concocted a new theory and created new documents — now claiming its so-called assignment — which it had previously relied on to show its standing and entitlement to assert its claims — was somehow intended to be on behalf of and related to a completely *different* entity that is a[n MAO]." (*Id.* 3 (emphasis in original; alteration added)). USAA argues because standing must exist from the outset of a lawsuit, MSP Series's attempt to rewrite history must fail. In this, the Court agrees. Before explaining why MSP Series lacks standing, it may be helpful to provide a brief background of the MSP Act and MAOs.

### B.    The MSP Act and MAOs

In *Auto-Owners*, the court set out the relevant background:

> Congress enacted the Medicare Act in 1965 to establish a health insurance program for the elderly and disabled. At that time, Medicare paid for medical expenses even when Medicare beneficiaries were also enrolled in third-party insurance policies that covered those same costs. *See MSP Recovery, LLC v. Allstate Ins. Co.*, 835 F.3d 1351, 1354 (11th Cir. 2016). In an effort to reduce costs, Congress passed the MSPA in 1980 which made Medicare the secondary payer, rather than the primary payer, for medical services provided to its beneficiaries when they are covered for the same services by a private insurer. *See* § 1395y(b)(2). Thus, the private insurer becomes the primary payer, as defined by the statute, for medical services. . . . Once notified of its responsibility for a payment, a primary payer must reimburse Medicare for any payment made within 60 days. § 1395y(b)(2)(B)(ii). In an effort to enforce this scheme, the MSPA created a private cause of action for double damages when a primary plan fails to provide payment. *See* § 1395y(b)(3)(A).

*Auto-Owners*, 2018 WL 1953861, at *1 (alteration added; footnote call number omitted).

Under Part C of the Medicare Act, Medicare enrollees may obtain Medicare benefits

through private insurer Medicare Advantage Organizations, instead of receiving direct benefits from the government under Parts A and B. *See* 42 U.S.C. § 1395w-21(a). MAOs contract with Medicare to administer benefits for a Medicare beneficiary. *See Auto-Owners*, 2018 WL 1953861, at *2 (citing *Humana Medical Plan, Inc. v. Western Heritage Ins. Co.*, 832 F.3d 1229, 1235 (11th Cir. 2016)). The MSP Act "makes Medicare insurance secondary to any 'primary plan' obligated to pay a Medicare recipient's medical expenses, including a third-party tortfeasor's automobile insurance." *State Farm*, 2018 WL 2392827, at *2 (quoting *Parra v. PacifiCare of Ariz., Inc.*, 715 F.3d 1146, 1152 (9th Cir. 2013)). "Medicare serves as a back-up insurance plan to cover that which is not paid for by a primary insurance plan." *Caldera v. Ins. Co. of the State of Pa.*, 716 F.3d 861, 863 (5th Cir. 2013) (internal quotation marks and citation omitted). In fact, "Medicare cannot pay medical expenses when payment has been made or can reasonably be expected to be made under an automobile or liability insurance policy or plan or no fault insurance." *MSPA Claims 1, LLC v. Liberty Mut. Fire Ins. Co.*, 322 F. Supp. 3d 1273, 1278 (S.D. Fla. 2018) ("*Liberty Mutual*") (internal quotation marks, citation, and alterations omitted).

Section 1395y(b)(3)(A) of the MSP Act provides a private right of cause of action against primary payers who do not reimburse secondary payers for conditional payments made to Medicare beneficiaries. *See* 42 U.S.C. § 1395w-21(a). Under section 1395y(b)(3)(A), an MAO may sue a primary plan that fails to reimburse an MAO's secondary payment. *See Humana Med. Plan, Inc.*, 832 F.3d at 1238.

C.     <u>As a Non-MAO, HFAP Cannot Bring or Assign a Medicare Secondary Payer Action; the Post-Lawsuit Documents Cannot Remedy that Fatal Defect</u>

MSP Series alleges HFHP paid the bills at issue.[1] (*See* TAC ¶ 11 ("HFHP paid $3,365.01 for K.N.'s accident-related medical expenses.")). To the extent USAA owes any reimbursement then, it would be to HFHP, the real party in interest to such a claim, or its assignee. Consequently, for MSP Series to have standing to sue USAA, there must exist an assignment — or a series of assignments — from HFHP to the named Plaintiff. Plaintiff alleges the assignment flows from HFHP through HFAP, from HFAP to MSP Recovery, and from MSP Recovery to Plaintiff. (*See id.* ¶¶ 14–19). It is Plaintiff's burden to show a valid assignment exists.

The first document evidencing an assignment is the HFAP Recovery Agreement. (*See id.* Ex. D). The problem with this first in the chain of documents is HFAP is not an MAO. Plaintiff admits HFAP is not an MAO. (*See id.* Ex. D (describing HFAP as "a Health Maintenance Organization, Maintenance Service Organization, Independent Practice Association, Medical Center, and/or other health care organization and/or provider")). Plaintiff's elaborate attempt to persuade the Court it always intended HFHP to be the assignor cannot alter the plain language of the Recovery Agreement identifying HFAP as the assignor.

Several other courts have already rejected Plaintiff's strained construction of otherwise unambiguous contract documents. For example, in *Auto-Owners*, the court found HFAP was not an MAO and Plaintiff lacked standing under the MSP Act. *See Auto-Owners*, 2018 WL 1953861, at *4 (in dismissing with prejudice for lack of standing, the court took judicial notice HFAP is not listed on the Centers for Medicare and Medicaid Services's website, "a source which cannot be reasonably questioned").

---

[1] Although Plaintiff alleges "all administrative functions and operations of HFHP, including the issuance of conditional payments, are accomplished by HFAP" (TAC ¶ 16), Plaintiff does not allege HFAP actually paid K.N.'s bills. If HFAP paid K.N.'s bills, it would not have standing to bring this suit — or assign its standing to sue — because only MAOs have standing under the MSP Act.

In *State Farm*, the court noted "[f]rom the beginning, Plaintiffs have led the Court to believe, and they continue to argue, that HFAP is an MAO." *State Farm*, 2018 WL 2392827, at *3 (alteration added). The court observed the plaintiffs' amended complaint was "misleading" regarding the true assignor, and the attempt to "clarify" the identity of the assignor was "not well-taken." *Id.* The court in *State Farm* did not stop there:

> The Court does not believe Plaintiffs have been completely forthcoming about exactly who the alleged assignor is in this case. . . . [T]he Amended Complaint makes clear that any reference to "Health First" refers to HFAP. No matter how Plaintiffs twist it, their Amended Complaint is not accurate. HFAP did not pay the representative beneficiary's medical expenses; HFHP did. Therefore, if anybody is to be reimbursed under the MSP provisions, it is HFHP, not HFAP.

*Id.* at * 4 (alterations added). Given the plaintiffs were only "outed" by the defendant revealing the pleading was inaccurate, and the plaintiffs had "absolutely no basis in law to support the argument that HFAP is an MAO," *id.* at *7, the court rejected the suggestion "Health First's 'corporate structure' was too confusing to" justify the pleading's misstatements, and entered Rule 11 sanctions against MSP Series and its counsel, *MAO-MSO Recovery II, LLC v. State Farm Mutual Auto. Ins. Co.*, No. 1:17-cv-JBM-JEH, 2018 WL 2735106, at *7–8 (C.D. Ill. June 7, 2018).

In *Liberty Mutual*, the court dismissed the case with prejudice, explaining because the plaintiff's assignors, including HFAP, are not MAOs, Medicare beneficiaries, or medical providers that directly treated the Medicare beneficiaries in the claims presented, they lacked standing to bring a private cause of action under the MSP Act and so the plaintiffs also lacked standing to bring a section 1395y(b)(3)(A) claim based on the assignors' purported assignment of rights. *See Liberty Mutual*, 322 F. Supp. 3d at 1283.

HFAP, the actual assignor who was a party to the Recovery Agreement, did not pay the bills at issue and suffered no injury, nor is it an MAO with standing to assert claims that may be

transferred to MSP Series. Certainly, MSP Series knew this — having been told as much by other district courts, including having to pay monetary sanctions for advancing the argument. Now, in response to the final opportunity it was offered at the June 29 Hearing, MSP Series presents post-lawsuit agreements and affidavits trying once more to satisfy its obligation to show it has standing to bring claims under the MSP Act. (*See generally* TAC, exhibits). With these new agreements and affidavits, Plaintiff would have the Court believe HFHP — an entity never once mentioned in the Recovery Agreement — is the true assignor, not the entity named in the document, HFAP.

The Addendum, Nunc Pro Tunc Assignment, and other post-lawsuit documents attached to the TAC attempt to show the original assignment agreements were meant to name HFHP as the true assignor, not the non-MAO HFAP. The Addendum and Nunc Pro Tunc Assignment, both dated June 1, 2018, purport to have as their effective date April 28, 2016, the same date the Recovery Agreement was executed. The Addendum states HFAP and MSP Recovery intended that HFHP be recognized as the assignor and party to the Recovery Agreement. (*See* TAC, Ex. F, ¶ 2). Mr. Keeler's First and Second Affidavits are immaterial, because the Recovery Agreement contains no ambiguous language that requires clarification. Its reference to HFAP brooks no ambiguity, and Mr. Keeler's mere statements that HFHP and HFAP are interchangeable do not make them so. What Plaintiff has concocted with the several new documents is a brazen attempt to cure the deficiencies for which other courts have previously sanctioned Plaintiff and its counsel.

"Article III standing must be determined as of the time at which the plaintiff's complaint is filed." *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1275 (11th Cir. 2003) (citations omitted). In *Lujan*, 504 U.S. at 571, n.4, the Supreme Court explained standing

is to be "assessed under the facts existing when the complaint is filed." And "while it is true that a plaintiff must have a personal interest at stake throughout the litigation of a case, such interest is to be assessed under the rubric of standing at the commencement of the case, and under the rubric of mootness thereafter." *Becker v. Fed. Election Comm'n*, 230 F.3d 381, 386, n.3 (1st Cir. 2000).

Plaintiff would have the Court accept its representation the Recovery Agreement "intended to assign the rights of HFAP's related health plans, including HFHP" based on a line that states "any health plans of [HFAP] are encompassed within this Agreement." (Opp'n 5–6 (citations omitted)). Yet, that reference in the Recovery Agreement is to payments MSP Recovery must make to HFAP, not to the scope of what entities' claims are being assigned. As noted by USAA, that same provision "was before the *Liberty Mutual*, *Travelers*,[2] *Auto-Owners*, and *State Farm* courts when they held that the HFAP Contract did not encompass an assignment of claims owned by HFHP." (Reply 2).

In any event, the Court does not give any weight to this eleventh-hour extra-contractual evidence of the parties' intent[3] given the Recovery Agreement is unambiguous on its face. *See, e.g.*, *Hibiscus Assocs. Ltd. v. Bd. of Trustees of Policemen & Firemen Ret. Sys. of City of Detroit*, 50 F.3d 908, 919 (11th Cir. 1995) ("When a contract term is clear and unambiguous, the best evidence of this intent is the term itself, and a court may not give such term meaning beyond that

---

[2] *MSP Recovery Claims, Series LLC v. Travelers Cas. and Surety Co.*, No. 17-23628-Civ-Williams (S.D. Fla. June 19, 2018), 9 [ECF No. 54] (dismissing case for lack of subject matter jurisdiction and noting "[b]ecause HFAP — the entity that allegedly assigned its rights to Plaintiff — is not an MAO, and thus lacks standing to bring a private cause of action under the MSPA, Plaintiff also lacks standing to bring a claim under Section 1395y(b)(3)(A) based on the purported assignment of rights from HFAP." (alteration added)).

[3] Tellingly, Mr. Keeler states it was his intention to sign the Recovery Agreement on behalf of HFAP. (*See* First Keeler Aff. ¶ 7; Second Keeler Aff. ¶ 8). Yet, the June 1 Addendum states HFHP was "inadvertently" not included by name in the Recovery Agreement. (*See* Addendum ¶ C).

clearly expressed in the four corners of the document." (citation omitted)). In the Recovery Agreement, HFAP is clearly defined as the "Client" that "irrevocably assigns . . . all of Client's right, title and interest in and to all Claims." (Recovery Agreement § 4.1). To give any effect to Plaintiff's and Mr. Keeler's new explanations about the "intent" of the document to evince an assignment by non-signatory HFHP is to misapply basic rules of contract construction by considering parol evidence. *See In re Yates Development, Inc*. 256 F.3d 1285, 1289 (11th Cir. 2001) (affirming district court's refusal to consider "extrinsic evidence of the parties' intent," including an affidavit, because "under Florida[4] law, the parol evidence rule bars admission of extrinsic evidence which would vary or contradict the unambiguous language of a contract" (citations omitted; footnote added)).

In the event the Court is not persuaded by the post-lawsuit documents Plaintiff prepared more than two years after the fact and now presents in an attempt to show HFAP is not the true assignor, Plaintiff relies on Federal Rule of Civil Procedure 15(d) to request the Court treat the TAC as a supplemental complaint and allow the case to proceed to the merits. (*See* Opp'n 11). Plaintiff relies in part on *Northstar Financial Advisors Inc. v. Schwab Investments*, 779 F.3d 1036, 1043–48 (9th Cir. 2015), where the court approved the district court's decision to allow the plaintiff to file a supplemental pleading after a post-complaint assignment from a party that had standing, given Federal Rule of Civil Procedure 15(d) allows a plaintiff to file a supplemental pleading to correct a defective complaint. (*See* Opp'n 10–11). This new argument fails to persuade for two reasons.

First, despite filing several motions for leave to amend its initial Complaint (*see* ECF Nos. 22, 34 & 35]), Plaintiff never sought leave to file an amended pleading under Rule 15(d); rather, it relied on Rules 15(a) and 15(c). (*See id*.). Moreover, the post-litigation documents do

---

[4] Florida law governs the Recovery Agreement. (*See* Recovery Agreement ¶ 8.3).

not cure the absence of standing at the time the suit was filed. "[N]unc pro tunc assignments are not sufficient to confer retroactive standing." *Alps South LLC v. Ohio Willow Wood Co.*, 787 F.3d 1379, 1384 (Fed. Cir. 2015) (alteration in original; internal quotation marks and citation omitted); *see also Diamond Coating Tech., LLC v. Hyundai Motor Am.*, 823 F.3d 615, 621 (Fed. Cir. 2016) (affirming district court's dismissal of patent infringement actions where the plaintiff executed *nunc pro tunc* agreements to clarify the parties' original intent to grant full ownership of the patents in question to the plaintiff, as "*nunc pro tunc* assignments are not sufficient to confer retroactive patentee status" (internal quotation marks, citation, and alteration in original omitted)). Indeed, "where a plaintiff never had standing to assert a claim against the defendants, it does not have standing to amend the complaint and control the litigation by substituting new plaintiffs, a new class, and a new cause of action." *Summit Office Park, Inc. v. U.S. Steel Corp.*, 639 F.2d 1278, 1282 (5th Cir. 1981).

Second, the Series Contract, purporting to assign rights from MSP Recovery to Series 16-05-456, LLC, is deficient, as it purports to transfer rights created under a Recovery Agreement dated April 28, 2015. (*See* Series Assignment). The Recovery Agreement is actually dated April 28, 2016. (*See* Recovery Agreement 1). And the named Plaintiff is MSP Series, not even Series 16-05-456 LLC. (*See* TAC ¶ 43). A "series" entity is similar to a corporation with subsidiaries, *see CML V, LLC v. Bax*, 6 A.3d 238, 251 (Del. Ch. 2010), and parent corporations lack standing to sue on behalf of their subsidiaries, *see Elandia Int'l, Inc. v. Koy*, 09-20588-Civ, 2010 WL 2179770, at *5 (S.D. Fla. Feb. 22, 2010).

Recognizing the TAC fails to allege exactly how MSP Series can sue on behalf of a subsidiary entity, Series 16-05-456 LLC, Plaintiff seeks to buttress the TAC by providing "the full suite of corporate documents." (Opp'n 12 n.5). Plaintiff's attempt to use a grouping of

limited liability and other agreements attached to the Opposition (*see* Opp'n, Exs. B–E [ECF Nos. 65-2 to 65-5]) to show Plaintiff's ability to maintain this action is not permitted. *See Kennedy v. Melbourne Beach, LLC*, No. 6:16-CV-1849-ORL-40DCI, 2017 WL 821815, at *1 (M.D. Fla. Mar. 2, 2017) (noting when a defendant launches "a facial attack, [] the Court is limited to the four corners of the Complaint in determining whether Plaintiff has standing to sue."); *see also Wilchombe v. Teevee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) ("Because [the plaintiff] did not reference these contracts in his amended complaint or attach them thereto, the district court properly refused to consider such contracts in ruling on the motion to dismiss." (alteration added; citation omitted)).

## IV.    CONCLUSION

In light of the ever-shifting allegations Plaintiff has presented in its four versions of its pleading, it is evident Plaintiff has played fast and loose with facts, corporate entities, and adverse judicial rulings. Plaintiff has inexorably been forced to recognize there never existed an MAO with the ability to bring or assign a claim under the MSP Act for recovery of payment of K.N.'s bills. Undeterred, Plaintiff sought to rewrite history with a convoluted story, told by Mr. Keeler and his counsel, that there was an MAO all along that properly assigned those rights. Yet, that is not so. The somewhat careless drafting of documents by lawyers clearly referencing a non-MAO as the assigning entity — HFAP — cannot be cured by attempting *post facto* to create and dispel an ambiguity that never existed.

Being fully advised, it is

**ORDERED AND ADJUDGED** that Defendant, USAA General Indemnity Company's Motion to Dismiss Plaintiff's Third Amended Class Complaint for Damages **[ECF No. 63]** is **GRANTED**. The case is **DISMISSED** without prejudice. *See Stalley*, 524 F.3d at 1232 ("A

dismissal for lack of subject matter jurisdiction is not a judgment on the merits and is entered without prejudice." (citation omitted)). The Clerk is instructed to mark the case **CLOSED**.

      **DONE AND ORDERED** in Miami, Florida, this 19th day of October, 2018.

                                          **CECILIA M. ALTONAGA**
                                          **UNITED STATES DISTRICT JUDGE**

cc:     counsel of record